UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jennifer C. L., | No. 22-cv-3135 (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer C. L. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 15–16 (Plaintiff's motion and supporting pleadings), 19–20 (Commissioner's motion and supporting pleadings).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Plaintiff asserts that the Administrative Law Judge ("ALJ") committed reversible error by ignoring the impact some of her mental limitations would have on her ability to work. Having carefully reviewed the record, the Court finds that the ALJ's determination of Plaintiff's capacity to work was supported by substantial evidence. As such, the Court recommends that Plaintiff's motion be denied, and that Defendant's motion be granted.

## BACKGROUND

On May 28, 2020, Plaintiff applied for Supplemental Security Income ("SSI"), amending her application to include a request for disability insurance benefits ("DIB") a few days later. (Tr. at 35,[1] 282–88.) Both applications alleged that Plaintiff had been disabled since March 1, 2019. (Tr. at 283, 287.) The Social Security Administration ("SSA") denied Plaintiff's initial claim for benefits, as well as her request for reconsideration. (Tr. at 191–95, 201–07.) Plaintiff timely requested a hearing before an ALJ, and the ALJ held a hearing on July 27, 2021. (Tr. at 54–83.) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (*Id.*)

On October 5, 2021, the Commissioner sent Plaintiff notice of an unfavorable decision. (Tr. at 32–53.) The ALJ recognized that Plaintiff suffered from several severe impairments, including cervical degenerative disc disease, ischemia (history of strokes), hyperlipidemia, depressive disorder, anxiety disorder, and substance abuse disorder (managed through suboxone). (Tr. at 38.) The ALJ considered each of Plaintiff's mental limitations through the lens of the four broad functional areas identified by the SSA as relevant to a mental-health disability determination, which are: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on February 22, 2022. (Docs. 10 through 10-3.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket number or exhibit number.

claimant's ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. § 416.920a(c)(3). The regulations require that the ALJ rate the degree of a claimant's impairment in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. § 416.920a(c)(4); *see also* SSA POMS DI 34001.032(F)(2), https://perma.cc/GQJ6-ETDN (last visited November 28, 2023) (describing the distinctions between each point on the severity scale in the Social Security Administration Program Operations Manual System ("POMS")). In each of the four functional areas, the ALJ found that Plaintiff was moderately impaired. (Tr. at 40–41.)

Despite Plaintiff's physical and mental impairments, the ALJ concluded Plaintiff did not qualify for benefits. (Tr. at 48.) First, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform light exertional work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), provided there were a number of additional physical and mental limitations. (Tr. at 42.) These included only occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, and crawling; frequently kneeling and crouching; frequently pushing and pulling with both upper extremities; frequently reaching, handling, and fingering bilaterally; and no concentrated exposure to extreme cold, heat, vibration atmospheric conditions, or hazards. (*Id.*) To account for Plaintiff's mental limitations, the ALJ found that Plaintiff had the capacity to understand, remember, and apply detailed instructions but not complex

---

[2] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)).

3

ones; that she could engage in superficial interactions with others, such as taking instructions, relaying information, and transferring materials; and that she could respond appropriately to routine changes in the work setting. (*Id.*) With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper,[3] consistent with the opinion of the vocational expert who testified at Plaintiff's hearing. (Tr. at 47–48; 80–81.) Because Plaintiff could perform her past relevant work, the ALJ found her to be not disabled.[4] (Tr. at 48.) Plaintiff properly exhausted her administrative remedies, such that the ALJ's decision is the final decision of the Commissioner, subject to this Court's review.

In arguing for reversal, Plaintiff contends that the ALJ "erred by failing to properly include the opinions provided by social security's own consultative examiner[,]" Dr. Lyle Wagner, III, in Plaintiff's RFC. (Doc. 16 at 9–16 (cleaned up).) Dr. Wagner examined Plaintiff on September 17, 2020, and submitted a comprehensive psychological report the next day. (Tr. at 1634–41.) Dr. Wagner found that Plaintiff would have moderate difficulties in several traditional workplace functions, including her ability to sustain attention and concentration; carry out tasks with persistence and pace; respond appropriately to brief and superficial workplace interactions; and tolerate the stress and pressure of entry-level jobs. (Tr. at 1640; *see also* Tr. at 47 (ALJ decision listing each of the limitations suggested by Dr. Wagner).) The ALJ found Dr. Wagner's opinions to be the most persuasive evidence of Plaintiff's mental health limitations, more so than two state

---

[3] Dictionary of Occupational Titles ("DOT") No. 323.687-014.
[4] Generally speaking, a claimant cannot receive benefits where they retain the ability to perform their past relevant work. *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f).

psychological consultants who opined that Plaintiff was less disabled, and Plaintiff's counselor, who opined that Plaintiff was more disabled. (Tr. at 46–47.) According to Plaintiff, the ALJ should have more specifically accounted for each of the limitations that Dr. Wagner identified in her RFC, and failing to do so was reversible error.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). Where substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4)[5] for evaluating SSI and DIB claims. Rather, she faults the ALJ for not including more of Dr. Wagner's limitations in the RFC (or explaining why some limitations were omitted), especially because the ALJ found Dr. Wagner to be the most credible medical source of mental-disability evidence.

An ALJ determines the scope of a person's mental impairments at steps two and three of the sequential process. 20 C.F.R. §§ 404.1520(a)(4)(ii) & (iii), 416.920(a)(4)(ii) & (iii); *Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *12 (D. Minn. Jan. 28, 2021), *R. and R. adopted*, 2021 WL 533685 (D. Minn. Feb. 12, 2021). But determining the RFC at step four is different, requiring a more thorough analysis than the cabined determination of the "level" of a person's mental impairments in administratively created fields. "[T]he different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888

---

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v).

F.3d 978, 980 (8th Cir. 2018) (per curiam) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting argument that finding of mental impairment at step two required imposing related limitations in the RFC at step four because "[e]ach step in the disability determination entails a separate analysis and legal standard")). An RFC hypothetical should capture the "concrete consequences" of a person's limitations, not focus on specific diagnostic or medical terms. *Scott v. Berryhill*, 855 F.3d 853, 858 (8th Cir. 2017). That is because the "RFC determination is 'an assessment of what [Plaintiff] can and cannot do, not what [s]he does and does not suffer from.'" *Shane T. v. Saul*, No. 18-cv-634 (BRT), 2019 WL 4143881, at *4 (D. Minn. Aug. 30, 2019) (quoting *Mitchell v. Astrue*, 256 F. App'x 770, 772 (6th Cir. 2007); citing 20 C.F.R. § 404.1545(a)(1); *Martise*, 641 F.3d at 923).

Of course, error would attach where an RFC determination wholly ignores a person's mental impairments. *Vicky R.*, 2021 WL 536297, at *14; *Mark E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6066260, at *10–11 (D. Minn. Dec. 7, 2021), *R. and R. adopted sub nom. Mark J. E. v. Kijakazi*, 2021 WL 6063631 (D. Minn. Dec. 22, 2021); *Charles C. v. Kijakazi*, No. 22-cv-2054 (JWB/DJF), 2023 WL 4215310, at *8–9 (D. Minn. May 22, 2023), *R. & R. adopted*, 2023 WL 4202850 (D. Minn. June 27, 2023). This is so because the analytical void deprives the Court of the opportunity for meaningful judicial review, and also because it may result in posing hypothetical questions to vocational experts that are inconsistent with a claimant's impairments. *Charles C.*, 2023 WL 4215310, at *8–9. But that is not the case here. Rather, the ALJ here found Plaintiff to have moderate limitations in each of the four functional categories of mental impairments. (Tr. at 40–41.)

7

When it came time to determine how those impairments might impact Plaintiff's ability to work, the ALJ actually imposed *greater* limitations than Dr. Wagner had suggested—where Dr. Wagner opined that Plaintiff could follow moderately complex workplace instructions, the ALJ concluded she could *not* apply complex instructions. (Tr. at 42; *see also* Tr. at 80.) While Plaintiff complains that the RFC could have adopted Dr. Wagner's limitations more directly, "the Court does not substitute its own views for those of the Commissioner, and if substantial evidence supports the Commissioner's judgment, the Court must affirm even if substantial evidence exists in the record that would have supported a contrary outcome." *Diane M. W. v. Kijakazi*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *4 (D. Minn. Sept. 22, 2022) (quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021)) (citation and internal quotation marks omitted). The ALJ appreciated Plaintiff's mental impairments, demonstrated through an RFC determination that reflected limitations in Plaintiff's ability to understand, remember, and apply instructions; her ability to interact with others;[6] and her ability to respond to workplace pressures. (Tr. at 42.) Each of these limitations addresses concerns raised by Dr. Wagner, which the ALJ also specifically identified. (Tr. at 47.) It is not necessary for an ALJ to use magic words where

---

[6] In her memorandum, Plaintiff criticizes the ALJ for limiting her RFC to "superficial" workplace interactions, asserting "the ALJ inexplicably supplanted an arbitrary definition for the term 'superficial interaction' without any explanation as to why it was needed here." (Doc. 16 at 12–13.) The ALJ's "superficial interaction" limitation was not inexplicable—it was drawn directly from Dr. Wagner's evaluative conclusions, which found that Plaintiff could respond appropriately to brief and superficial workplace interactions with moderate (but not marked) difficulty. (Tr. at 1640.) Plaintiff cannot assert that the ALJ gave Dr. Wagner's opinion too little credence but also attack the ALJ for adopting certain of Dr. Wagner's limitations verbatim.

the record demonstrates the ALJ understood a claimant's mental impairments and imposed RFC limitations related to those impairments. *Cf. Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) ("[O]ur deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized.") (quoting *Chismarich*, 888 F.3d at 980).

## RECOMMENDATION

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 15) be **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. 19) be **GRANTED.**

DATED: November 28, 2023              s/Douglas L. Micko
                                      DOUGLAS L. MICKO
                                      United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).